| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------X<br>RACKY RAMCHAIR,<br><br>                               Petitioner,<br><br>      - against -<br><br>JAMES CONWAY, Superintendent,<br>Attica Correctional Facility,<br><br>                               Respondent.<br>----------------------------------------------------------------X | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | FOR PUBLICATION<br><br><br><br>MEMORANDUM<br>AND ORDER<br><br>04-CV-4241 (JG) |

A P P E A R A N C E S:

      FRANK HANDELMAN
           780 Third Avenue
           New York, NY 10017
      *Attorney for Petitioner*

      RICHARD A. BROWN
           District Attorney, Queens County
           125-01 Queens Boulevard
           Kew Gardens, New York 11415
      By:   John M. Castellano
           Jennifer Hagan
      *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        This Memorandum and Order resolves the effect of the State's failure to comply with the conditional writ of habeas corpus. For the reasons stated below, I conclude that the State's inaction converts the conditional writ to an unconditional writ, and that the State is precluded from retrying Ramchair.

        I first granted Ramchair's petition for a writ of habeas corpus on April 4, 2008. *Ramchair v. Conway*, 671 F. Supp. 2d 365 (E.D.N.Y. 2008). In accordance with my order, the Clerk of Court entered judgment ordering respondent to release Ramchair within 45 days of the order, unless the State declared its intention to retry him within that period.

Respondent appealed. The judgment of this Court was initially vacated by the Second Circuit's summary order of June 30, 2009, which remanded the case to me for further proceedings. *Ramchair v. Conway*, 335 F. App'x 122 (2d Cir. 2009). On remand, I adhered to my initial decision that Ramchair was entitled to a new trial. *Ramchair v. Conway*, 671 F. Supp. 2d 371 (E.D.N.Y. 2009). On April 2, 2010, the Second Circuit affirmed the judgment of this Court and ordered that the mandate should issue forthwith. *Ramchair v. Conway*, 601 F.3d 66, 78 (2d Cir. 2010).

The effect of the Second Circuit's April 2, 2010 decision was to reinstate this Court's order to release Ramchair after 45 days unless the State declared its intention to retry him during that period. The State, however, took 81 days to respond, informing the Court on June 22, 2010 that it would be retrying Ramchair. Because no extension of the deadline had been sought and no reason for missing it was offered, I ordered the State to show cause in writing why it should not be precluded from retrying Ramchair.

Conditional writs of habeas corpus were apparently a twentieth-century innovation. Originally, the only form of ultimate relief on a habeas corpus petition was unconditional discharge. *See In re Medley*, 134 U.S. 160, 173 (1890) ("under the writ of *habeas corpus* we cannot do anything else than discharge the prisoner from the wrongful confinement"). The Supreme Court later recognized that a federal district court has "broad discretion in conditioning a judgment granting habeas relief," and "may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). The development of this remedial flexibility provides a major benefit to state prosecutors, who can continue detaining the successful petitioner even after his conviction has been found

2

constitutionally invalid. In exchange for this benefit, it is reasonable to expect the State to comply with the conditions set forth in a conditional writ. As a leading treatise on habeas corpus puts it, "[t]he 'retry or release' form of the typical conditional release order and the history of such orders as affording a limited and time-constrained alternative to immediate release may justify an order forbidding reprosecution … if the state inexcusably … fails to act within the prescribed time period." 2 Randy Hertz & James Liebman, *Federal Habeas Corpus Practice and Procedure* § 33.3.

In my judgment, the State's failure to act within the prescribed time period in this case is inexcusable, and the circumstances are sufficiently extraordinary to justify an order prohibiting reprosecution. Thirteen years have passed since the unfair trial that resulted in Ramchair's conviction, and the case against him is based entirely on the sole victim's eyewitness testimony. Previous opinions in this case should have made abundantly clear to the State how seriously the federal courts view this delay. *See Ramchair v. Conway*, 601 F.3d 66, 78 (2d Cir. 2010) (noting "the long delay Ramchair has endured since his conviction"); *Ramchair v. Conway*, 671 F. Supp. 2d 371, 385 (E.D.N.Y. 2009) ("[H]owever compelling the need for comity is in the habeas setting as a general matter, I cannot ignore how long Ramchair has had to wait to receive a fair trial."). Given that history, the State should be required to provide a significant reason for further deferring the case's ultimate resolution.

In response to my order to show cause, the State gives two reasons why it disregarded the 45-day deadline, neither of which is substantial. First, the State asserts that, after the Second Circuit decision, it "made efforts to re-establish contact with the complaining witness." Castellano Aff. ¶ 5. As a purported cause for the delay, this explanation is wholly inadequate, even assuming that the State was taken by surprise when the Second Circuit affirmed

3

my decision and issued the mandate immediately.  Forty-five days was more than enough time to contact the witness for the limited purpose of determining whether it was appropriate to put Ramchair on trial for a fourth time on the 1995 robbery charge.  In any event, it is unclear how much of the delay was actually due to this factor.  Though the State asserts that some of the time after the Second Circuit's decision was spent re-establishing contact with the complaining witness, the State does not actually say what the efforts consisted of or when contact was made.

Accordingly, it is the State's second proffered reason – it was considering a petition for Supreme Court review – that appears to account for the full extent of the delay.  After discussions between the Attorney General's Office and the D.A.'s Office, the decision not to seek a writ of certiorari was finally reached on June 21, 2010.  Castellano Aff. ¶ 6.  The State's declaration of intention to retry Ramchair came the next day.  This explanation for failing to comply with conditional writ also rings hollow.  The State alludes to the 90-day time limit for filing a certiorari petition; though it does not dispute now that it was actually subject to a 45-day deadline, it apparently treated the 90-day period for seeking Supreme Court review as its deadline for proceeding with the case.  But the Second Circuit's mandate had already issued – indeed, the opinion affirming the grant of the writ ordered that the mandate issue forthwith – so even a timely petition for certiorari would not have relieved the State from the consequences of the judgment.  The proper course for the State was to make the certiorari decision expeditiously.  Had the State decided to seek certiorari within the 45 days afforded by the conditional writ, it could have asked the Second Circuit to recall the mandate and stay its issuance while the petition was pending.  Either way, there was nothing to stop the State from declaring its intention to retry Ramchair within the period set forth in the judgment.  Instead, the State allowed the 45-day period to expire before making its decision.

In arguing that it should nevertheless be permitted to retry Ramchair, the State contends that the prejudice from the delay is minimal because Ramchair would have been in prison anyway on another conviction.  The troubling implication of this argument is that, because there was an independent reason to detain Ramchair, the State should be permitted to flout a court-imposed deadline without consequence.  I disagree.  Moreover, by waiting thirteen years for the review of his unfair conviction to come finally to a conclusion, Ramchair had already suffered sufficient prejudice to require, at a bare minimum, reasonable diligence by the State in meeting its 45-day deadline.  And it can hardly come as a surprise to the State that it would be held accountable for failing to meet the deadline; putting aside my own comments about the delays in the case, the Second Circuit's decision to dispense with the default timing provisions for the issuance of the mandate was an unmistakable signal of the need to act promptly in a case that had dragged on needlessly for too long.  In any event, at least in the circumstances presented here – where the person it wishes to retry has already served the bulk of the 10 to 20 year sentence imposed as a result of a defective conviction and there is no good reason for failing to comply with (or seek relief from) the deadline – accountability is appropriate.

For the reasons stated above, what was a conditional writ has, as a result of the state's inaction, become an unconditional writ of habeas corpus, and the State may neither reprosecute Ramchair nor continue to detain him pursuant to the invalid conviction.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 20, 2010
Brooklyn, New York

5